E-FILED
Friday, 26 February, 2021  04:11:42 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| WALTER LEE DAWDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-3257 |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

Plaintiff Walter Lee Dawdy appeals from the denial of his application for Social Security Disability Insurance Benefits (Disability Benefits) under Title II of the Social Security Act.  42 U.S.C. §§ 416(i) and 423.  This appeal is brought pursuant to 42 U.S.C. § 405(g).  Dawdy filed a Motion for Summary Judgment (d/e 17).  The Defendant Commissioner filed a Motion for Summary Affirmance (d/e 19).   Dawdy filed a Reply Memorandum of Law (d/e 22).  The parties consented to proceed before this Court.

Consent to the Exercise of Jurisdiction by a United States Magistrate Judge and Reference Order entered April 6, 2020 (d/e 13).  For the reasons set forth below, the Decision of the Commissioner is REVERSED and REMANDED.

## STATEMENT OF FACTS

### Background

Dawdy was born March 31, 1964.  He graduated from high school and secured an associate degree.  He previously worked as a janitor, maintenance worker, factory package packer, certified nurse's assistant (CNA), and retail store stocker.  He filed his application for Disability Benefits on March 2, 2016 and alleged that he became disabled on September 30, 2014 (Onset Date).  Dawdy suffered from chronic obstructive pulmonary disease (COPD) and asthma.  He continues to meet insured status for Disability Benefits through December 31, 2020.  Certified Transcript of Proceedings before the Social Security Administration (d/e 7 and 8) (R.), 48, 51, 56, 108, 268.

### Evidence Before the Evidentiary Hearing

On September 12, 2013, Dawdy saw his primary care physician Dr. Randall Voigts, D.O., for a medication refill.  He reported no cardiovascular or pulmonary symptoms.  R. 633.  On examination, Dawdy had normal breath sounds with no wheezing, rhonchi, rales, or crackles.  Dr. Voigts assessed asthma and COPD and prescribed Singulair tablets.  R. 636.

On December 12, 2013, Dawdy saw Dr. Voigts for a follow up on his breathing.  Dawdy was using his inhalers more often since the weather

changed. R. 626.  On examination, he had abnormal breath sounds, bronchial breath sounds, and wheezing, but no rhonchi, rales, or crackles. Dr. Voigts assessed asthma and COPD.  He told Dawdy to continue his current medications.  R. 628.

On March 11, 2014, Dawdy saw Dr. Voigts for wheezing, shortness of breath, and chest congestion.  R. 619.  Dawdy's oxygen level was 89 percent.  On examination, he had decreased breath sounds, bronchial breath sounds, wheezing, and rhonchi, but no rales or crackles.  Dr. Voigts assessed COPD exacerbation and prescribed Levaquin (levofloxacin) and a 30-day prednisone taper prescription.  Dr. Voigts also renewed a prescription for ipratropium-albuterol.  R. 622.

On July 2, 2014, Dawdy went to the emergency room by ambulance complaining of shortness of breath, wheezing, and a non-productive cough. His oxygen level was as low as 79 percent.  R. 574.  On examination, Dawdy had tight air entry, wheezing, and rales.  His heart examination was normal.  R. 575.  He was diagnosed with a severe COPD/asthma attack. He was admitted and received nebulizer treatments and intravenous (IV) solumedrol, and IV hydration.  A chest x-ray showed hyperinflation of the lungs bilaterally and an increase in the retrosternal clear space, suggesting

COPD.  R. 571.  He felt better and was discharged the next day and could resume normal activity as tolerated.  R. 577.

On July 10, 2014, Dawdy saw Dr. Voigts for a follow up after the July 2, 2014, emergency room visit.  He reported chest congestion; dyspnea with shortness of breath on environmental exposure, walking inside, and at rest; a hacking cough; and thick bronchorrhea.  He felt poorly and tired.  R. 613.  On examination, Dawdy had decreased breath sounds, bronchial breath sounds, but no wheezing, rhonchi, rales, or crackles.  R. 615.  Dr. Voigts ordered lab tests and considered referral to pulmonology services. R. 616.

On July 31, 2014, Dawdy saw Dr. Voigts for a health maintenance check.  He reported a little shortness of breath.  His oxygen level was 97 percent and on examination, he had decreased breath sounds, but no wheezing, rhonchi, rales, or crackles.  R. 609.  Dr. Voigts continued Dawdy's current treatment plan.  R. 610.

On September 12, 2014, Dawdy went to the emergency room with shortness of breath and wheezing.  He reported dyspnea, shortness of breath, wheezing, and a productive cough. R. 562.  On examination, Dawdy had wheezing and decreased breath sounds.  R. 563.  A chest x-ray showed no significant change from prior examinations.  R. 558.  He

was diagnosed with COPD exacerbation and admitted to the hospital and given IV antibiotics and steroids.  R. 565.  He felt better and was discharged the next day.  R. 566.

On October 29, 2014, Dawdy saw Dr. Voigts.  He had headaches, congestion, nasal discharge, tightness in his chest, dyspnea with shortness of breath, coughing, and wheezing.  R. 599.  On examination, Dawdy had decreased breath sounds, bronchial breath sounds, wheezing, and rhonchi with cough, but no rales or crackles.  R. 601.  Dr. Voigts assessed asthma and COPD with exacerbation and increased Dawdy's prednisone dosage.  R. 602-03.

On November 17, 2014, Dawdy saw Dr. Voigts for breathing problems.  He was using his nebulizer every four to six hours and the treatments helped.  R. 593.  On examination, he had decreased breath sounds and bronchial breath sounds, but no wheezing, rhonchi, rales, or crackles.  Dr. Voigts decreased the dosage of Dawdy's prednisone.  R. 595-96.

On December 24, 2014, Dawdy saw Dr. Voigts.  He felt chest congestion, shortness of breath at rest and while walking inside, and a dry cough.  R. 589.  On examination, he had decreased breath sounds, bronchial breath sounds, mild wheezing, rales, and crackles, but no

rhonchi.  Dr. Voigts assessed pneumonia, asthma, and rhinitis.  R. 590.  Dr.
Voigts prescribed Levaquin.  R. 591.

On December 29, 2014, Dawdy went to the emergency room by
ambulance with dyspnea, shortness of breath, wheezing, chest congestion,
and non-productive cough.  R. 549.  On examination, Dawdy had
decreased breath sounds.  R. 550.  His oxygen level was 74 percent.  He
was diagnosed with COPD exacerbation.  A chest x-ray showed an
emphysematous configuration, no pneumonitis, no heart failure, and a
normal sized heart.  The impression was emphysema, no active disease.
R. 544.  He was admitted for 23-hour observation and given IV steroids, IV
antibiotics, nebulizer treatments, and oxygen.  R. 551.  He was discharged
the next day.  R. 554.

On January 20, 2015, Dawdy saw Dr. Voigts with shortness of breath
and lightheadedness.  He reported some chest pain that was worse with
breathing.  He said he had shortness of breath when exposed to dust and
cold temperatures, at rest, and when walking indoors.  He was still short of
breath after using either his inhaler or nebulizer.  R. 671-72.  On
examination, Dawdy had decreased breath sounds, bronchial breath
sounds, rhonchi, but no wheezing, rales, or crackles.  Dr. Voigts also noted
tachycardia and assessed rhinitis and asthma.  Dr. Voigts discontinued

Dawdy's blood pressure medicine Lisinopril, ordered blood tests, and told him to remain off work for two weeks.   R. 674.

On February 3, 2015, Dawdy saw Dr. Voigts.  He was breathing and feeling better than he had recently.  He still had shortness of breath at rest and while walking inside and also continued to have shortness of breath after using his inhaler or nebulizer.  R. 665.  On examination, Dawdy had decreased breath sounds and bronchial breath sounds, but no wheezing, rhonchi, rales, or crackles.  Dr. Voigts noted no tachycardia and assessed rhinitis and asthma.  Dr. Voigts said Dawdy could return to work on February 4, 2015.  R. 667-68.

On February 24, 2015, Dawdy went to the emergency room by ambulance for shortness of breath and wheezing.  He was given a nebulizer treatment and methylprednisolone in the ambulance and felt better when he arrived at the emergency room.  R. 538.  A chest x-ray showed findings suggesting emphysema with no focal areas of consolidation or pleural effusions.  R. 534.  He was admitted for COPD exacerbation.  R. 539.  He was discharged the next day.  R. 540.

On March 10, 2015, Dawdy went to the emergency room by ambulance with shortness of breath.  On examination, he had "wheezes all over."  R. 527-28.  A chest x-ray suggested COPD.  R. 523.  He was

diagnosed with asthma exacerbation and admitted for treatment.  He was discharged the next day and could resume normal activities as tolerated. R. 529-30.

On April 1, 2015, Dawdy went to the emergency room with wheezing and chest pain.  On examination, his oxygen level was 97 percent and he had significant wheezing bilaterally.  He was assessed with COPD exacerbation and admitted for steroids and nebulizer treatments.  R. 517. A chest x-ray showed clear lung fields with background mild hyperexpansion.  The impression was no acute cardiopulmonary process identified and emphysema.  R. 512.  Dawdy felt better and was discharged the next day and could return to his normal activities as tolerated.  R. 519.

On April 7, 2015, Dawdy saw Dr. Voigts for a follow up after his emergency room visit.  He reported shortness of breath while walking inside. On examination, he had decreased breath sounds and bronchial breath sounds, but no wheezing, rhonchi, rales, or crackles.  Dr. Voigts assessed rhinitis and asthma.  R. 660-62.  Dr. Voigts continued his current treatments and Dawdy agreed to see a pulmonologist.  Dr. Voigts referred Dawdy to pulmonologist Dr. Nadeem Ahmed, M.D.  R. 660, 663.

On April 24, 2015, Dawdy went to the emergency room with wheezing, shortness of breath, and cough.  This episode had gone on for a

couple of days but worsened in the last few hours before he came to the

emergency room.  R. 505.  On examination, his lungs were significant for

wheezing.  A chest x-ray showed new interstitial infiltrates in Dawdy's lungs

that could represent edema or pneumonia.  R. 498.  He was assessed with

asthma exacerbation and pneumonia and was admitted for observation and

received steroids, antibiotics, and nebulizer treatments.  R. 506.  He was

discharged the next day.  See R. 504.

On April 30, 2015, Dawdy had a chest x-ray and CT scan.  The x-ray

showed no confluent infiltrate.  The CT scan showed diffuse centrilobular

emphysematous change with paraseptal emphysematous change of the

upper lung zones and no confluent infiltrate; dependent opacity in the mid-

to-lower lung base indicated atelectasis.  R. 493.

On May 4, 2015, Dawdy saw Dr. Ahmed.  Dawdy reported that he

stopped smoking a year earlier.  He had a dry cough.  On examination, his

lungs were clear with no wheezing and good air entry.  Dr. Ahmed ordered

a pulmonary function test.  R. 585.

On May 7, 2015, Dawdy saw Dr. Voigts.  He felt chest congestion;

shortness of breath with environmental exposure, at rest, and while walking

inside; and a dry, hacking cough.  R. 655.  On examination, Dawdy had

decreased breath sounds and bronchial breath sounds, but no wheezing,

rhonchi, rales, or crackles.  His heart examination was normal.  R. 657.  Dr. Voigts assessed allergic rhinitis, asthma, and COPD.  R. 658.

On May 15, 2015, Dawdy underwent a pulmonary function test.  His Forced Vital Capacity (FVC) was 80 percent of predicted; his Forced Expiratory Volume in one second (FEV1) was 55 percent of predicted; and his FEV1/FVC ratio was 56.  The test showed hyperinflation and air trapping, severe airways obstruction, no airways restriction, and minimally reduced diffusion capacity.  R. 704.

On May 26, 2015, Dawdy went to the emergency room with shortness of breath and a cough.  R. 486.  He also reported dyspnea, shortness of breath, and wheezing.  On examination, Dawdy had diffuse bilateral wheezing.  R. 487.  He was diagnosed with acute exacerbation of COPD and was admitted.  R. 489.  He was treated with oxygen and steroids and was discharged on May 28, 2015.  R. 492.

On June 12, 2015, Dawdy went to the emergency room with wheezing and a non-productive cough.  R. 479.  A chest x-ray showed emphysema without evidence of acute cardiopulmonary process, no change.  R. 477.  He improved in the emergency room with nebulizer treatments and was discharged from the emergency room when he was stable.  R. 480.

On June 26, 2015, Dawdy went to the emergency room with shortness of breath.  He was diagnosed with acute COPD exacerbation and given a nebulizer treatment.  He felt better and was discharged from the emergency room when he was stable.  R. 473.

On July 27, 2015, Dawdy went to the emergency room with shortness of breath and wheezing.  He had dyspnea on exertion but had no chest pain.  R. 466.  On examination, he had diffuse wheezing and diffuse decreased breath sounds.  R. 467.  A chest x-ray showed emphysematous changes without definite consolidation, effusion, or pneumothorax.  R. 463. He was diagnosed with COPD exacerbation and was treated with three nebulizer treatments and discharged home with medication.  R. 468.

On August 6, 2015, Dawdy saw allergist Dr. Ellen Pratt, M.D., for a consultation.  R. 401-03.  On examination, Dawdy had normal respiratory rate and rhythm and no increased work of breathing and  his lungs were clear.  Dr. Pratt ordered lab tests but did not perform skin testing because Dawdy's FEV1 was less than 70 percent.  R. 403.  On August 12, 2015, Dr. Pratt reviewed radioallergosorbent (RAST) test result on Dawdy from a year earlier.  Dr. Voigts' office provided the test results.  The test showed that Dawdy was allergic to cats.  R. 400.

On August 17, 2015, Dawdy saw Dr. Ahmed.  He denied any shortness of breath.  Dr. Ahmed noted that the May 15, 2015, pulmonary function test showed severe airways obstruction with an FEV-1/FVC ratio of 56 and an FEV-1 of 55% of predicted.  Dr. Ahmed said that an echocardiogram showed an ejection fraction of 76%.  Dawdy reported that he had problems with shortness of breath and a non-productive cough.  On examination, Dawdy's lungs were clear with no wheezing and good air entry.  Dr. Ahmed assessed asthma COPD, GOLD stage IV and continued his prescription for prednisone.  R. 583.

On August 20, 2015, Dawdy saw Dr. Voigts.  He felt chest congestion, shortness of breath at rest and while walking inside, and a dry cough.  R. 651.  On examination, Dawdy had decreased breath sounds and bronchial sounds, but no wheezing, rhonchi, rales, or crackles.  Dr. Voigts assessed allergic rhinitis, asthma, and COPD and continued Dawdy's current treatment.  R. 652.  Dr. Voigts noted, "No new med changes, as his lungs sound the best I have heard in some time."  R. 653.

On August 31, 2015, Dawdy went to the emergency room with shortness of breath, coughing, and wheezing.  R. 456.  On examination, he had wheezing and decreased breath sounds and his oxygen level was 93 percent.  R. 457-58.  An x-ray showed no acute cardiopulmonary process.

R. 453.  He was assessed with exacerbation of COPD and discharged from the emergency room.  R.  459.

On September 17, 2015, Dawdy saw allergist Dr. Pratt.  Dawdy reported that he was lucky to sleep four to five hours a night and he needed his inhaler medications when he woke up.  He stopped taking antihistamines for three days before this office visit so Dr. Pratt could perform skin testing.  R. 397.  On examination, Dawdy had decreased breath sounds and audible wheezing.  The wheezing improved after an albuterol nebulizer treatment.  Dr. Pratt did not perform the skin test due to Dawdy's wheezing.  R. 399.

On September 18, 2015, Dawdy went to the emergency room by ambulance with shortness of breath, wheezing, and a cough.  R. 445.  A chest x-ray showed new mild atelectasis and/or infiltrate at both lung bases.  R. 442.  On examination, he had significant bilateral wheezing.  He was assessed with COPD exacerbation and pneumonia and was admitted for observation.  He was given steroids, antibiotics and nebulizer treatments.  R. 446.  He was discharged the next day and said he felt "fantastic."  R. 448-49.

On September 28, 2015, Dawdy saw Dr. Ahmed.  He reported increasing shortness of breath and a cough.  He said that he could not

afford Spiriva and so was using Combivent and Advair.  On examination, Dawdy's lungs were clear with no wheezing and good air entry.  Dr. Ahmed assessed asthma and COPD, GOLD stage IV and prescribed an antibiotic. R. 582.

On October 19, 2015, Dawdy saw Dr. Voigts.  He stopped working in September and he was feeling much better.  He believed that the heat aggravated his breathing.  R. 645.  He still had shortness of breath, worse at night, but he was not short of breath after using the inhaler or nebulizer. R. 646.  On examination, he had decreased breath sounds and bronchial breath sounds, but no wheezing, rhonchi, rales, or crackles.  R. 647.  Dr. Voigts assessed allergic rhinitis, asthma, and COPD.  Dr. Voigts decreased Dawdy's prednisone dosage.  R. 648.

On November 27, 2015, Dawdy went to the emergency room by ambulance with shortness of breath.  He had run out of some medications the day before.  His oxygen level was 91 percent on the ambulance.  On examination, he had wheezes, rales, and rhonchi.  R. 437.  A chest x-ray showed normal heart size, slightly hyperinflated lungs with mild diffuse interstitial fibrosis and unchanged mild generalized peribronchial thickening, likely chronic, and no infiltrates or effusions.  R. 433.  He felt

better after his stay in the emergency room and was discharged home.  R. 438.

On December 17, 2015, Dawdy saw Dr. Pratt.  He told Dr. Pratt about his trips to the emergency room and said his congestion was improved.  He said burning leaves made his congestion worse and going to his mother's house sometimes made his congestion worse because she had a cat.  R. 394.  Dawdy gave the following responses regarding his condition for the prior four weeks: his asthma kept him from getting much done most of the time; he had shortness of breath once a day; his asthma did not interrupt his sleep; he used his inhaler or nebulizer more than three times a day; and his asthma was well controlled.  Dr. Pratt told Dawdy to follow Dr. Ahmed's treatment plan and added fluticasone sprays to his other medications for his allergic rhinitis.  R. 395.

On December 21, 2015, Dawdy saw Dr. Ahmed.  He reported increasing shortness of breath and a productive cough for about three or four days.  He had some dyspnea on exertion.  On examination, his lungs had coarse crackles, mild wheezing, and good air entry.  Dr. Ahmed assessed acute bronchitis, asthma, and COPD, GOLD state IV.  Dr. Ahmed prescribed a Z-Pac antibiotic and prednisone and changed his Combivent and Advair prescriptions to albuterol and Symbicort.  R. 581.

On January 13, 2016, Dawdy went to the emergency room by ambulance with wheezing, shortness of breath, and cough.  R. 426.  On examination, he had bilateral significant wheezing and was assessed with COPD exacerbation.  The emergency room physician spoke to Dr. Voigts about Dawdy's frequent emergency room visits.  Dr. Voigts stated that Dawdy was supposed to be taking Advair, but Dawdy said that it was too expensive.  He was discharged from the emergency room and was "educated/counseled regarding diagnosis/treatment."  R. 428.

On February 28, 2016, Dawdy went to the emergency room with shortness of breath, wheezing, and a non-productive cough.  R. 417.  On examination, his oxygen level was 97 percent, and he had wheezes and decreased breath sounds.  R. 418-19.  A chest x-ray showed that his lungs were clear.  R. 414.  He was assessed with COPD exacerbation, received a nebulizer treatment, and was discharged from the emergency room.  R. 413.

On March 16, 2016, Dawdy saw Dr. Ahmed.  He reported some shortness of breath and dyspnea on exertion but no cough.  On examination, he had bilateral wheezing.  Dr. Ahmed assessed acute bronchitis, asthma, and COPD, GOLD stage IV and prescribed a Z-Pac and prednisone and renewed other prescriptions.  R. 580.

On May 11, 2016, Dawdy saw Physician's Assistant Arlene Norris, PA-C, in Dr. Voigts' office.  He reported some shortness of breath, chest congestion, and no dyspnea.  R. 744.  On examination, he had normal breath sounds and no wheezing, rhonchi, or crackles.  Norris assessed asthma and COPD. R. 746.  Norris said to continue current therapy.  R. 748.

On June 20, 2016, Dawdy saw Dr. Ahmed.  He denied any shortness of breath and reported that he was "fairly active at home."  On examination, his lungs were clear with no wheezing and good air entry.  Dr. Ahmed assessed COPD and asthma and continued his prescriptions for ProAir and Symbicort.  His insurance would not cover Tudorza.  Dr. Ahmed advised Dawdy to be as active as he could.  R. 680.

On June 23, 2016, Dawdy had a pulmonary function test.  His FVC was 88 percent of predicted, his FEV1 was 68 percent of predicted, and his FEV1/FVC ratio was 59.  The test showed moderate obstructive airways disease.  He had no significant response to bronchodilators during the test.  R. 683.

On July 12, 2016, Dawdy saw Nurse Practitioner Victoria Hargrave, FNP-BC, in Dr. Voigts' office.  He woke up at 3:00 a.m. with shortness of breath, wheezing, and a cough and reported that he had chest congestion

all the time, chronic dyspnea during exertion, chronic cough, and wheezing.

His shortness of breath did not affect his speaking and his cough was

productive. R. 738. His breathing difficulty improved after use of his

nebulizer. R. 740. On examination, Dawdy's tactile fremitus was

diminished and he had wheezing, but no rhonchi, rales, or crackles.

Hargrave assessed COPD. R. 741. Hargrave administered a nebulizer

treatment. Dawdy felt better after the treatment, his breathing was more

relaxed, and his wheezing improved. R. 742. Hargrave told Dawdy to

increase fluid and to use his nebulizer every four to six hours for the next

24 hours and decrease frequency until he was back to "'normal' breathing."

Hargrave told him to change his heating and air conditioning filters often,

use a humidifier, avoid second-hand smoke, and avoid smoking. She told

him to clean the humidifier often. R. 741.

On July 12, 2016, Dr. Voigts completed a form entitled "Residual

Functional Capacity Report." The form recited Dawdy's description of his

symptoms as follows:

> Walter Dawdy subjectively states that since September 30,
> 2014 he has missed work consistently more than one day per
> month, and frequently left work early due to symptoms of (a)
> difficulty breathing (frequently with severe coughing episodes)
> and (b) fatigue due to asthma and COPD. He states on his
> worst days these symptoms have caused numerous emergency
> room visits, inpatient admissions, and other days where he is
> confined to his home. He states on his better days he spends

most of the day off of his feet due to fatigue, frequently reclining to make breathing easier.

R. 1030.    Beneath this recitation, Dr. Voigts stated that Dawdy suffered from COPD, asthma, unable to breath, anxiety attacks, and coughing.  The form then asked, "Based on your training, education and treatment of Walter Dawdy, is his statement about his subjective complaint credible?" Dr. Voigts answered "Yes."  The statement further asked, "Is your opinion held within a reasonable degree of medical certainty?"  Dr. Voigts answered "Yes."  The form provided a space under the heading "EXPLANATION/REMARKS:".  Dr. Voigts left the space blank.  R. 1030.

On August 16, 2016, Dawdy went to the emergency room with shortness of breath and wheezing.  R. 722.  On examination, he had bilateral wheezes, no intercostal retractions, and he used accessory muscles to breath.  R. 723.  A chest x-ray showed no acute cardiopulmonary disease.  The x-ray also showed emphysema and scattered fibrosis, but no infiltrate, no pleural effusion, and no pneumothorax.  R. 720.  He received oxygen and albuterol treatments and was released from the emergency room.  R. 718.

On August 30, 2016, Dawdy saw Nurse Practitioner Hargrave for a follow up on his August 16, 2016, emergency room visit.  He felt better now and said he was back to "his normal."  He experienced shortness of breath

if he was outside in the heat or if he was mowing when it was hot outside. R. 839.  On examination, he had decreased breath sounds at the bases, no wheezing, no rhonchi, no rales, and no crackles.  Hargrave assessed COPD and continued his current treatment.  R. 842.

On September 21, 2016, Dawdy saw Dr. Ahmed.  He reported increased shortness of breath.  On examination, his lungs were clear with good air entry.  Dr. Ahmed assessed COPD and asthma and ordered a pulmonary function test and a chest x-ray.  Dr. Ahmed also "signed a statement regarding his disability as per his attorney."  R. 873.  The x-ray showed evidence of obstructive airways disease with clear lungs.  There was no significant change since August 13, 2012.  R. 872.

On September 21, 2016, Dr. Ahmed also completed a form entitled "Residual Functional Capacity Report."  R. 1032.  The form recited Dawdy's description of his symptoms as follows:

> Walter Dawdy subjectively states that since September 30, 2014 he has missed work consistently more than one day per month, and frequently left work early due to symptoms of (a) difficulty breathing (frequently with severe coughing episodes) and (b) fatigue due to asthma and COPD. He states on his worst days these symptoms have caused numerous emergency room visits, inpatient admissions, and other days where he is confined to his home. He states on his better days he spends most of the day off of his feet due to fatigue, frequently reclining to make breathing easier.

R. 1032.  Beneath this recitation, Dr. Ahmed stated that Dawdy suffered from severe COPD.  The form then asked, "Based on your training, education and treatment of Walter Dawdy, is his statement about his subjective complaint credible?"  Dr. Ahmed answer "Yes."  The statement further asked, "Is your opinion held within a reasonable degree of medical certainty?"  Dr. Ahmed answered "Yes." The form provided a space under the heading "EXPLANATION/REMARKS:".  Dr. Ahmed left the space blank.   R. 1032.

On August 23, 2016, state agency physician Dr. Julio Pardo, M.D., prepared a Physical Residual Functional Capacity Assessment form for Dawdy.  Dr. Pardo opined that Dawdy had only environmental limitations due to his impairments of COPD and asthma and that Dawdy must avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, dusts, gases, poor ventilation, etc.  R. 143.

On September 26, 2016, Dawdy went to the emergency room with shortness of breath, wheezing, and a non-productive cough.  R. 712.  On examination, he had no rales or wheezes, no intercostal retractions, and no use of accessory muscles to breath.  R. 714.  A chest x-ray showed no active disease other than emphysema, no change.  R. 710, 761.  He

received a solumedrol injection and nebulizer treatments.  R. 708.  He was discharged to home.  R. 715.

On September 29, 2016, Dawdy saw Dr. Voigts for a follow up after his emergency room visit.  He reported shortness of breath at rest and when walking inside, and wheezing which was worse during cold weather. R. 836.  On examination, he had decreased breath sounds and a cough with rhonchi and wheezing, but no rales or crackles.  Dr. Voigts assessed allergic rhinitis, asthma, and COPD.  R. 837.  Dr. Voigts prescribed Levaquin for 10 days.  R. 838.

On October 6, 2016, Dawdy had a pulmonary function test.  His FVC was 96 percent of predicted, his FEV1 was 73 percent of predicted, and his FEV1/FVC ratio was 62.  He had no significant improvement with bronchodilators and had evidence of hyperinflation of his lungs.  The test showed moderate airways obstruction, no airways restriction, and minimally reduced diffusion capacity.  R. 728.

On October 10, 2016, Dawdy saw Dr. Voigts for a follow up.  He reported that he finished the Levaquin and prednisone prescriptions and felt much better.  R. 973.  He also reported dyspnea during exertion and a non-productive cough.  R. 974.  On examination, he had decreased breath sounds, but no wheezing, rhonchi, rales, or crackles.  R. 975.  Dr. Voigts

assessed allergic rhinitis, asthma, and COPD and continued Dawdy's treatment.  R. 975.

On November 5, 2016, Dawdy went to the emergency room with shortness of breath, wheezing, and a cough.  R. 770.  On examination, he had wheezes, but no intercostal retractions or use of accessory muscles. R. 772.  He received nebulizer treatments and was discharged.  The emergency room physician recommended staying indoors, keeping doors and windows closed, taking his medications as directed.  R. 772.

On November 14, 2016, Dawdy saw Dr. Voigts.  He reported dyspnea during exertion and non-productive cough.  R. 970.  On examination, he had decreased breath sounds and bronchial breath sounds, but no wheezes, rhonchi, rales, or crackles. R.971.  Dr. Voigts assessed allergic rhinitis, asthma, and COPD and continued Dawdy's current treatment.  R. 971.

On December 6, 2016, state agency physician Dr. Young-Ja Kim, M.D. completed a Physical Residual Functional Capacity Assessment form for Dawdy.  Dr. Kim opined that Dawdy had only environmental limitations due to his impairments of COPD and asthma and that Dawdy must avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, dusts, gases, poor ventilation, etc.  R. 156-58.

On January 11, 2017, Dawdy saw Dr. Ahmed.  Dr. Ahmed noted that Dawdy's October 2016 pulmonary function test showed moderate airways obstruction.  On examination, Dawdy had no wheezing.  Dr. Ahmed assessed panlobular emphysema, mild intermittent asthma without complication, shortness of breath, and cough.  Dr. Ahmed continued his medications and recommended being as active as he could.  R. 868.

On February 14, 2017, Dawdy saw Dr. David Harmon, M.D., in Dr. Voigts' office for a follow up on Dawdy's shortness of breath.  Dawdy was feeling better.  R. 961.  He still reported dyspnea while walking inside and a non-productive cough.  R. 962. On examination, he had decreased breath sounds and bronchial sounds, but no wheezes, rhonchi, rales, or crackles. R. 963.  Dr. Harmon assessed allergic rhinitis, asthma, and COPD and continued Dawdy's treatment.  R. 963-64.

On April 5, 2017, Dawdy saw Dr. Ahmed for a follow-up.  He reported increased shortness of breath and occasional cough.  R. 1058.  On examination, he had no wheezing.  Dr. Ahmed diagnosed panlobular emphysema, mild intermittent asthma without complication, shortness of breath, and cough.  R. 1060.   Dr. Ahmed added Spiriva to Dawdy's medications.  R. 1061.

On April 17, 2017, Dawdy saw Nurse Practitioner Kaci N. Havlin, FNP-C, in Dr. Voigts' office, for pain in his left arm.  He felt something pop when he was raising a window.  R. 956.  On examination, Dawdy had slightly decreased breath sounds, but no wheezes, rhonchi, rales, or crackles.  Havlin told him to keep his arm in a sling and take ibuprofen every six hours for the next four days.  R. 959.

On August 2, 2017, Dawdy had a pulmonary function test.  His FVC was 97 percent of predicted, his FEV1 was 82 percent of predicted, and his FEV1/FVC ratio was 68.  He had no significant improvement with bronchodilators.  The test showed minimal airways obstruction, no airways restriction, and severely reduced diffusion capacity corrected for lung volume.  R. 856

On August 15, 2017, Dawdy saw Dr. Voigts.  He reported that the left side of his chest was painful when he breathed in.  He felt chest congestion, and he had difficulty taking a breath.  His symptoms were worse at night.  R. 938.  On examination, Dawdy had decreased breath sounds; bronchial breath sounds, prominent in the left chest; and wheezing; but, no rhonchi, rales, or crackles.  R. 939.  Dr. Voigts assessed allergic rhinitis, asthma, and COPD and prescribed Levaquin and prednisone.  R. 940.

On August 25, 2017, Dawdy saw Nurse Practitioner Havlin for a follow up after his August 15, 2017 appointment with Dr. Voigts.  He reported a dry cough, but no dyspnea, no chest congestion, and no wheezing.  R. 932.  On examination, his lungs were normal.  R. 933.

On October 4, 2017, Dawdy saw Dr. Voigts.  He had a draining sore on the back of his right upper arm.  R. 924.  On examination, he had decreased breath sounds, but no wheezes, rhonchi, rales, or crackles.  Dr. Voigts assessed cellulitis of the right upper arm and prescribed Levaquin.  R. 927.

On October 16, 2017, Dawdy saw Dr. Ahmed.  He had "baseline" shortness of breath and an occasional cough.  Dr. Ahmed stated that Dawdy's August pulmonary function test showed minimal airways obstruction with FEV-1/FVC ratio of 68.  R. 1074.  On examination, Dawdy had no wheezing.  Dr. Ahmed assessed panlobular emphysema and mild intermittent asthma without complication.  Dr. Ahmed continued Dawdy's medications, recommended that he be as active as he could, and encouraged him to lose weight.  Dawdy was six feet two inches and weighed 238 pounds.  R. 1076.

On November 27, 2017, Dawdy saw Nurse Practitioner Havlin.  He reported more shortness of breath.  He could not lie in bed and slept sitting

up.  His chest was tight, and he had a wet, non-productive cough.  R. 917.
On examination, he had decreased breath sounds.  Havlin assessed
bronchitis, not specified as chronic or acute, and prescribed Levofloxacin
and prednisone.  R. 922.

On November 27, 2017, Dr. Voigts completed a form entitled,
"Review of Residual Functional Capacity Report of Randall Voigts, D.O.,
Dated July 12, 2016."  Dr. Voigts stated that there had been no change in
Dawdy's condition since the July 12, 2016 Report and no changes in Dr.
Voigts' responses to the questions in the July 12, 2016 Report.  R. 1029.

On January 22, 2018, Dawdy had a pulmonary function test.  His
FVC was 92 percent of predicted, his FEV1 was 71 percent of predicted,
his FEV1/FVC ratio was 62 percent.  He had no significant improvement
with bronchodilators.  His lung capacity was 82 percent of predicted with
increased upper airway resistance.  The test showed moderate airways
obstruction, no airways restriction, and moderately reduced diffusion
capacity.  R. 1096.

On February 2, 2018, Dr. Ahmed completed a form entitled "Review
of Residual Functional Capacity Report of Nadeem Ahmed, MD, Dated
September 21, 2016."  Dr. Ahmed opined that Dawdy had no change since
Dr. Ahmed's September 2016 report.  R. 1031.

On February 27, 2018, Dawdy saw Dr. Voigts.  He reported trouble breathing when his neighbors burned wood.  R. 1090.  He reported shortness of breath at rest and while walking, a dry hacking cough, and chronic wheezing.  R. 1091.  On examination, he had decreased breath sounds, but no wheezes, rhonchi, rales, or crackles.  R. 1092.  Dr. Voigts assessed allergic rhinitis, asthma, and COPD and continued Dawdy's treatment plan.  Dr. Voigts also recommended a weight loss diet and documenting weekly weight loss.  R. 1093.  Dawdy was six feet tall, weighed 244 pounds, and had a body mass index of 33.1.  R. 1092.

The Evidentiary Hearing

On May 24, 2018, the Administrative Law Judge (ALJ) conducted an evidentiary hearing.  R. 100-36.  Dawdy appeared with his attorney.  Vocational expert Stella Frank appeared by telephone.  R. 102; see R. 374 (Frank curriculum vitae).

Dawdy testified first.  He previously worked as a janitor and packer in a factory and primarily performed janitorial work and occasionally packed coffee filters into boxes.  He also worked as a CNA in a nursing home where he bathed patients, fed patients, lifted patients, and changed bed linens.  Dawdy also worked at a retail store where he stocked shelves, initially, and then moved to maintenance work.  He cleaned floors and

bathrooms, stripped and waxed floors, operated scrubbing machines and push carts. R. 109-10. Once a year he did some painting. R. 112. When his health got bad, he went back to stocking shelves. R. 109-10. He lifted about 10 pounds when he was a stocker and lifted up to 50 pounds when he worked maintenance. R. 111.

Dawdy alleged he became disabled on his Onset Date September 30, 2014, but he worked until October 2015. He did not work full-time after his Onset Date because he missed too many days of work due to his health problems:

> I was -- well, I was full-time up until the time I quit, but with me missing work all the time, they -- just time -- you know, just being full-time but it was just like being part-time because I missed so much.

R. 110. Some weeks he only worked 14 hours. R. 111. Dust, perfume, humidity caused respiratory problems that made him miss work. Extreme cold also caused shortness of breath. R. 113. He quit on October 1, 2015 because his employer was getting ready to fire him. R. 110. During his last year of work, his pace at work slowed to 50 percent or less of his pace in previous years. He also took extra breaks and used his nebulizer at work. R. 123.

Dawdy said he had breathing problems every day, worse in the morning. He used a nebulizer and three inhalers every day. He used one

inhaler once a day, one inhaler twice a day, and a rescue inhaler four to eight times a day.  A doctor advised him to use a cane because he became lightheaded due to breathing problems.  R. 113.  The ALJ asked Dawdy if his symptoms were only caused by dust, perfume, and humidity:

> Q So you talked about this dust, the perfume, and humidity.  Is that something that just makes it worse? Is it there constantly, or is it okay until those things come around?
>
> A It's pretty well okay. Well, like, I have shortness of breath just by walking anymore. And so then I hit this dust and pollen and humidity, it just makes it worse.

R. 114.  Dawdy's breathing was also affected by pollen; wind; and burning grass, leaves, or trash.  He kept his windows closed when his grass was mowed.  A family member mowed his grass for him. R. 116.  He stopped mowing his grass in July 2016.  He mowed it then and had to go to the emergency room the next day.  R. 118.

Dawdy opined that he could walk 50 yards.  His shortness of breath worsened if he walked farther.  After walking 50 yards, he needed to sit and rest for 15 to 20 minutes "until my breathing calms down.  And either use my inhaler or nebulizer."  R. 114.  On a bad day, however, he could only walk from one room to another.  R. 124.  He could carry objects for short distances, "But you get any, like 10, 15 feet, gets pretty bad."  He said that he got tired and short of breath.  R. 115.  The distance that he could carry

objects varied with the weight of the object.  R. 116.  He did not have problems with shortness of breath if he was sitting still unless he had his feet on the floor.  R. 115.

Dawdy did laundry, dishes, light sweeping, and vacuuming at his home, but he took extra time to complete chores.  He did part of a chore, stopped and rested and sometimes used his rescue inhaler, and then completed the chore.  R. 116.  When he washed dishes, the steam from the water caused shortness of breath.  If the water was not steamy, he could wash dishes for 15 minutes before he would need to take a break.  R. 120-21.  When he did laundry, he only did one load at a time.  He rested while the washing machine and dryer were running.  R. 120.  As he continued to perform a chore, his break times would get longer.  R. 122. He wore a mask when he vacuumed.  R. 126.

Dawdy's daily activities varied depending on how well he slept.  On a normal day, he got up at 9:00 a.m., and took a breathing treatment, got dressed, and then sat down and rested.  Depending on the humidity and wind, he either took his dog outside or just let his dog outside while he stayed inside.  He no longer had a cat because he was allergic to cats.  If he took the dog out, he got the mail at that time also.  He went back in and rested before he fed and watered the dog.  After taking care of the dog, he

did a chore such as dishes or laundry.  He could not do two chores, such as laundry, dishes, or vacuuming, on the same day.  R. 116-17.  He spent 80 to 90 percent of the day resting in the recliner.  R. 120.

Dawdy took his rescue inhaler with him when he went shopping.  He rested in the store and used his inhaler while shopping, but did not shop if the weather was windy or cold.  He also drove short distances, five miles or less, as he got tired and short of breath if he drove long distances.  R.  118, 122, 125, 128.

Dawdy saw Dr. Voigts once every three months, and he saw Dr. Ahmed once every three months.  R. 119.

Vocational exert Franks then testified.  The ALJ asked Franks a hypothetical question:

> Okay.  I want to ask you a few hypothetical questions here. And for the hypotheticals, assume an individual of the Claimant's age and educational abilities.  For the first hypothetical, the individual would need to avoid concentrated exposure to heat and cold, fumes, dust, gases, poor ventilation, pollen, grass, and steam. Starting there, would past work be available?

R. 130.  Franks opined that the person could perform Dawdy's prior work as a stocker.  R. 130.  Franks opined that such a person could also work as a linen room attendant, with 42,000 such jobs available nationally; a

counter supply worker, with 94,000 such jobs available nationally; and a change person, with 35,000 such jobs available nationally.  R. 131.

## THE OPINION OF THE ALJ

On August 22, 2018, the ALJ issued his decision.  R. 48-57.  The ALJ followed the five-step analysis set forth in Social Security Administration Regulations (Analysis).  20 C.F.R. §§ 404.1520, 416.920.  Step 1 requires that the claimant not be currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If true, Step 2 requires the claimant to have a severe impairment.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If true, Step 3 requires a determination of whether the claimant is so severely impaired that he is disabled regardless of his age, education and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  To meet this requirement at Step 3, the claimant's condition must meet or be equal to the criteria of one of the impairments specified in 20 C.F.R. Part 404 Subpart P, Appendix 1 (Listing).  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant is not so severely impaired, the ALJ proceeds to Step 4 of the Analysis.

Step 4 requires the claimant not to be able to return to his prior work considering his age, education, work experience, and Residual Functional Capacity (RFC).  20 C.F.R. §§ 404.1520(e) and (f), 416.920(e) and (f).  If

the claimant cannot return to his prior work, then Step 5 requires a determination of whether the claimant is disabled considering his RFC, age, education, and past work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c).  The claimant has the burden of presenting evidence and proving the issues on the first four steps.  The Commissioner has the burden at Step 5 to present evidence that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy.  20 C.F.R. §§ 404.1512, 404.1560(c); Weatherbee v. Astrue, 649 F.3d 565, 569 (7th Cir. 2011); Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005).

The ALJ determined that Dawdy met his burden at Steps 1 and 2.  He had not engaged in substantial gainful activity since his Onset Date September 30, 2014.  The ALJ found that, although Dawdy continued to work until October 1, 2015, he did not work at the level of substantial gainful activity.  He also suffered from the severe impairments of asthma and COPD.  The ALJ concluded at Step 3 that Dawdy's impairments or combination of impairments did not meet or equal a Listing.  R. 51.

At Step 4, the ALJ determined that Dawdy had the following RFC:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: avoid concentrated

exposure to heat, cold, fumes, dusts, gases (including steam),
poor ventilation, pollen and grass.

R. 51.  The ALJ gave great weight to the opinions of Drs. Pardo and Kim.

The ALJ also mentioned some of Dawdy's appointments with Dr. Ahmed

and healthcare professionals in Dr. Voigts' office, three of the pulmonary

function tests, and two of Dawdy's chest x-rays.  R. 53-54.  The ALJ cited

the August 30, 2016 visit with Nurse Practitioner Hargrave in Dr. Voigts'

Office and noted that Dawdy mentioned going to the emergency room after

mowing his yard.  R. 53-54.  The ALJ also cited the two chest x-rays taken

at two of the emergency room visits.  The ALJ, however, did not mention

any of the treatment notes or other records from Dawdy's emergency room

visits and did not discuss any of the records of his hospital admissions

shortly before his Onset Date on July 2, 2014 and September 12, 2014, or

after his Onset Date on February 24, 2015, March 10, 2015, and May 26,

2015.  See R. 489-92, 528-30, 540, 565-66, 577.[1]

The ALJ discounted the Residual Function Report forms completed

by Drs. Ahmed and Voigts.  The ALJ said that the forms did not contain

actual medical opinions of Dawdy's functional limitations.  The ALJ stated

that each doctor "was simply asked to agree with the claimant's subjective

---

[1] Dawdy was also admitted for 23 hours on December 29, 2014 and admitted for observation on April 24, 2015, and September 18, 2015.  R. 506-07, 554, 448-49.  The ALJ did not mention these events either.

complaint that are not supported by the treatment notes." The ALJ also noted that each doctor "was not asked to independently describe the claimant limitations and he offered no explanation for agreeing with the subjective complaints." The ALJ stated the treatment notes did not support Dawdy's complaints, "The treatment records indicate that the claimant responded to medication intervention, was not hospitalized and pulmonary function test remarks do not indicate a listing limitation." R. 55.

After determining the RFC, the ALJ found at Step 4 that Dawdy could perform his prior work as a stocker. The ALJ relied on vocational expert Franks' testimony. In the alternative, the ALJ found at Step 5 that Dawdy could perform a significant number of jobs that existed in the national economy. The ALJ relied on Medical-Vocational Guidelines, 20 C.F.R. Part 404 Subpart P Appendix 2, and the opinions of vocational expert Franks. R. 56-57. The ALJ concluded that Dawdy was not disabled. R. 57.

Dawdy appealed the ALJ's decision. On September 10, 2019, the Appeals Council denied Dawdy's request for review. The ALJ's decision then became the final decision of the Defendant Commissioner. R. 1. Dawdy then filed this action for judicial review.

ANALYSIS

This Court reviews the Decision of the Commissioner to determine whether it is supported by substantial evidence.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the findings if they are supported by substantial evidence and may not substitute its judgment or reweigh the evidence. Jens v. Barnhart, 347 F.3d 209, 212 (7th Cir. 2003); Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).  This Court will not review the ALJ's evaluation of statements regarding the intensity, persistence, and limiting effect of symptoms unless the evaluation is patently wrong and lacks any explanation or support in the record.  See Pepper v. Colvin, 712 F.3d 351, 367 (7th Cir. 2014); Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008); SSR 16-3p, 2017 WL 5180304, at *1 (October 25, 2017) (The Social Security Administration no longer uses the term credibility in the evaluation of statements regarding symptoms).  The ALJ must articulate at least minimally his analysis of all relevant evidence.  Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994).  The ALJ must "build an accurate and logical bridge from the evidence to his conclusion."  Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

In this case, the ALJ failed to articulate any analysis of Dawdy's numerous emergency room visits and three hospitalizations after the Onset Date.  The ALJ also incorrectly stated twice that Dawdy had not been hospitalized and used that incorrect statement as one of the bases for discounting the Residual Functional Capacity Report forms executed by Drs. Voigts and Ahmed.  R. 55.  The ALJ is not required to mention every piece of evidence, but omitting all treatment notes from many, many emergency room visits and omitting all records of two hospitalizations within a few months or a few weeks before the Onset Date and three hospitalizations after the Onset Date is too much, particularly when the ALJ erroneously stated that Dawdy had not been hospitalized.  The ALJ failed to articulate minimally his analysis of the relevant evidence.  See Herron, 19 F.3d at 333.  The case decision must be reversed and remanded.

THEREFORE, IT IS ORDERED that Plaintiff Walter Lee Dawdy's Motion for Summary Judgment (d/e 17) is ALLOWED; the Defendant Commissioner's Motion for Summary Affirmance (d/e 19) is DENIED, and the decision of the Defendant Commissioner is REVERSED and

REMANDED for further proceedings pursuant to 42 U.S.C. § 405(g)

sentence four.   THIS CASE IS CLOSED BEFORE THIS COURT.

ENTER:   February 26, 2021

_____ s/ *Tom Schanzle-Haskins* _____
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE